BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

Attorneys for Plaintiffs
WCSD, Inc. and SFB Holdings Inc.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WCSD, INC. and SFB HOLDINGS INC.,<br><br>Plaintiffs,<br><br>v.<br><br>KARNDEEP UPPAL, individually and as Trustee of the SFB INTELLECTUAL PROPERTY CUSTODIAL TRUST, a/k/a SFB HOLDINGS INTELLECTUAL PROPERTY CUSTODIAL TRUST,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) CANCELLATION OF TRADEMARK REGISTRATIONS (15 U.S.C. §§ 1051, 1064, 1119);**<br><br>**(2) CANCELLATION FOR FRAUD ON THE USPTO (15 U.S.C. §§ 1064(3), 1119);**<br><br>**(3) CANCELLATION FOR PRIORITY AND LIKELIHOOD OF CONFUSION (15 U.S.C. §§ 1052(d), 1064, 1119);**<br><br>**(4) FALSE OR FRAUDULENT REGISTRATION (15 U.S.C. § 1120);**<br><br>**(5) DECLARATORY JUDGMENT (28 U.S.C. § 2201); AND**<br><br>**(6) DECLARATORY RELIEF — UNAUTHORIZED AND VOIDABLE TRANSACTION (CAL. CORP. CODE §§ 300, 310, 1001)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs WCSD, Inc. and SFB Holdings Inc. complain of Defendant Karndeep Uppal, individually and as Trustee of the SFB Intellectual Property Custodial Trust, also known as the SFB Holdings Intellectual Property Custodial Trust, and allege as follows:

## INTRODUCTION

1. Defendant Karndeep "Kay" Uppal co-founded WCSD, Inc., the franchisor of the West Coast Sourdough chain of deli-style restaurants and served as its Chief Executive Officer until the company's board removed him in April 2024. Since 2023, the West Coast Sourdough trademarks have been owned by Plaintiff SFB Holdings Inc., a holding company WCSD created for that sole purpose, of which Uppal was one of three directors.

2. Since his ouster as CEO, Uppal quietly exploited his continuing seats on the WCSD and SFB Holdings boards and set about a scheme to undermine West Coast Sourdough's business, establish a competing restaurant chain, and stock it with West Coast Sourdough franchisees. As part of that plot, Uppal has tried to take West Coast Sourdough's brand for himself through a series of secret filings with the United States Patent and Trademark Office.

3. In February 2026, without telling his fellow directors, Uppal signed a document on both sides of a transaction—once as SFB Holdings' "Chief Executive Officer" and once as "Trustee" of a purported trust he controlled—that purported to assign SFB Holdings' federal trademark registrations to that trust, and he recorded that document with the USPTO.

4. Uppal then went further. On April 30, 2026, he caused two new applications to be filed with the USPTO to register WEST COAST SOURDOUGH and WEST COAST SOURDOUGH DELI—the very marks SFB Holdings already owns and has registered—in the name of his trust. To obtain those registrations, the applications represented that the trust owned the marks and SFB Holdings' existing registrations; claimed first-use dates in 2020 and acquired distinctiveness based on the applicant's purported five years of "substantially exclusive and continuous use"; and asserted that no one else held conflicting rights in the marks. As specimens of the trust's supposed use, the applications submitted screenshots of WCSD's own website.

5. Those representations falsely attributed ownership and rights of use to the Purported Trust, and Uppal knew that the purported transfer was unauthorized. The Purported

Trust did not exist before February 2026 at the earliest, has never operated a restaurant, and had not itself used either mark. The relevant commercial use was by WCSD and its licensed franchisees, under marks owned by SFB Holdings; because the Purported Trust acquired no rights in those marks, that use did not inure to its benefit. Relying on those false statements, the USPTO issued U.S. Registration Nos. 8,486,459 and 8,486,460 to the trust on October 6, 2026.

6. Plaintiffs bring this action to cancel those registrations, to correct the USPTO's records so that they again reflect SFB Holdings' ownership of its own registrations, and to recover any damages caused by the procurement of those registrations.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over Plaintiffs' substantive claim under 15 U.S.C. § 1120 pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). This action involves registered marks; in such an action independently within its jurisdiction, the Court may determine the right to registration, cancel registrations, and otherwise rectify the register under 15 U.S.C. § 1119. The Court may grant appropriate declaratory and supplemental relief under 28 U.S.C. §§ 2201 and 2202. The Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over Plaintiffs' claim for a declaration that WCSD's and its franchisees' use of the WCSD Marks does not infringe the Challenged Registrations, because the Purported Trust, as record registrant, could assert a coercive claim against that use under 15 U.S.C. § 1114. The Court has supplemental jurisdiction over Plaintiffs' claim under California law pursuant to 28 U.S.C. § 1367(a), because that claim forms part of the same case or controversy as Plaintiffs' Lanham Act claims, including the question whether SFB Holdings or the Purported Trust owned the marks when the Applications were filed.

8. This Court has personal jurisdiction over Uppal because he resides in California and committed the acts alleged in this Complaint in California.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Uppal resides in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred here. Assignment to the Sacramento Division is proper under Local Rule 120(d) because

the claims arose in Sacramento County, where Plaintiffs maintain their principal places of business and where Uppal resides.

## THE PARTIES

10. Plaintiff WCSD, Inc. ("WCSD") is a California corporation with its principal place of business in Sacramento County. WCSD is the franchisor of West Coast Sourdough restaurants.

11. Plaintiff SFB Holdings Inc. ("SFB Holdings") is a California corporation with its principal place of business in Sacramento County. WCSD established SFB Holdings to hold ownership of WCSD's trademarks. SFB is short for West Coast Sourdough's slogan "San Francisco Born & Bread," which is also registered with the USPTO (Reg. No. 7,246,272).

12. Defendant Karndeep "Kay" Uppal is a California resident. On information and belief, Uppal resides in Sacramento County. Uppal is sued individually and in his claimed capacity as trustee of the "SFB Intellectual Property Custodial Trust," which is the record registrant of the registrations challenged in this action, and which, on information and belief, is the same purported trust identified as the "SFB Holdings Intellectual Property Custodial Trust" in the February 2026 assignment described below (in either name, the "Purported Trust"). Uppal is identified in the USPTO's records as the Purported Trust's sole trustee.

13. Plaintiffs do not admit that the Purported Trust was validly created, that Uppal was validly appointed as its trustee, or that the Purported Trust acquired any right, title, or interest in any trademark. Plaintiffs sue Uppal in his claimed capacity as trustee because he asserts in filings with the USPTO that he holds rights in the marks at issue in that capacity. If any other person claims to serve as trustee of the Purported Trust, Plaintiffs will seek leave to amend to name that person.

## GENERAL ALLEGATIONS

### I. WCSD Builds The West Coast Sourdough Brand, And SFB Holdings Owns Its Trademarks.

14. WCSD was incorporated in February 2020. It is the franchisor of West Coast Sourdough, a chain of casual deli-style restaurants that offers specialty sandwiches, soups, and salads for dine-in or take-out.

15. From its inception until February 2026, WCSD had three directors: Manjinder Deol, now its Chief Executive Officer; Damonjeet Bhatia, its Chief Financial Officer; and Uppal. Uppal served as WCSD's Chief Executive Officer from March 2020 until April 2024, when WCSD's board removed him.

16. WCSD has used the WEST COAST SOURDOUGH name and mark in commerce in connection with restaurant services since at least as early as February 2020 and has used the WEST COAST SOURDOUGH DELI mark since at least January 18, 2021. As of early 2026, WCSD had franchised approximately 70 West Coast Sourdough restaurants throughout California and across multiple states, each of which operates under the West Coast Sourdough marks pursuant to a franchise agreement with WCSD that licenses the marks to the franchisee and requires the franchisee to operate in conformity with WCSD's standards and specifications.

17. WCSD registered three marks with the USPTO that are at issue in this action: the standard-character mark WEST COAST SOURDOUGH (Reg. No. 6,132,333, registered August 18, 2020); the standard-character mark WEST COAST SOURDOUGH DELI (Reg. No. 6,324,643, registered April 13, 2021); and the West Coast Sourdough logo (Reg. No. 6,349,858, registered May 11, 2021) (collectively, the "WCSD Registrations," and the marks they cover, together with WCSD's common-law rights in them, the "WCSD Marks"). True and correct copies of the registration certificates are attached as Exhibits 1–3.

18. The two word-mark registrations issued on the Supplemental Register. During examination, the USPTO determined that WEST COAST SOURDOUGH was merely descriptive of restaurant services under Section 2(e)(1) of the Lanham Act, and that WEST COAST SOURDOUGH DELI was primarily geographically descriptive under Section 2(e)(2), 15 U.S.C. § 1052(e)(1)–(2), and WCSD amended each application to the Supplemental Register. A mark registered on the Supplemental Register may become eligible for registration on the Principal Register upon a new application establishing acquired distinctiveness, including, when appropriate, evidence of substantially exclusive and continuous use as a mark for the preceding five years. 15 U.S.C. § 1052(f). The logo registration, by contrast, issued on the Principal Register for a composite design mark—the words WEST COAST SOURDOUGH within a ring of stars

surrounding a stylized image of the Golden Gate Bridge—in which the wording "WEST COAST SOURDOUGH" is disclaimed, meaning that the registration confers no exclusive right in those words apart from the design.

19. Registration on the Principal Register carries benefits that Supplemental Register registration does not, including prima facie evidence of the validity of the mark, of the registrant's ownership of it, and of the registrant's exclusive right to use it in commerce, 15 U.S.C. § 1057(b); constructive notice of the registrant's claim of ownership, *id.* § 1072; nationwide constructive-use priority, *id.* § 1057(c); and the opportunity for the registrant's right to use the mark to become incontestable, *id.* § 1065. By early 2026, WCSD and its franchisees had used both word marks continuously for approximately five years, positioning SFB Holdings to seek Principal Register registration under Section 2(f).

20. In April 2023, WCSD established SFB Holdings to hold ownership of the WCSD Marks for WCSD's benefit. Deol, Bhatia, and Uppal were named SFB Holdings' sole directors. Uppal, in his capacity as WCSD's Chief Executive Officer, acted as SFB Holdings' incorporator and was its only officer when it was formed.

21. On April 17, 2023, WCSD and SFB Holdings executed an Assignment of Trademarks transferring the WCSD Registrations, together with the goodwill they symbolize, from WCSD to SFB Holdings (the "2023 Assignment"). The 2023 Assignment also transferred two additional trademark applications associated with the West Coast Sourdough business. Uppal executed the 2023 Assignment on behalf of WCSD and SFB Holdings. WCSD recorded the 2023 Assignment with the USPTO that same day, at Reel/Frame 8044/0573. A true and correct copy of the 2023 Assignment is attached as Exhibit 4.

22. Through the 2023 Assignment, WCSD and SFB Holdings desired, intended, and understood that SFB Holdings would hold the WCSD Marks exclusively for the benefit of WCSD, and WCSD retained the power to control and license the marks, which are associated with the West Coast Sourdough brand and essential to its business and to the operations of its franchisees. SFB Holdings' sole purpose was and is to serve as the holding company for WCSD's trademarks; It holds no material assets other than intellectual property associated with the West Coast

Sourdough business and conducts no independent operating business. WCSD's use of the WCSD Marks, and its franchisees' use under licenses that WCSD grants and controls, have inured to the benefit of SFB Holdings as the owner of record that WCSD designated.

23. Since April 2023, SFB Holdings has owned the WCSD Marks and the WCSD Registrations, and WCSD and its authorized franchisees have continuously used the marks under WCSD's control and with SFB Holdings as owner of record. WCSD also operates the West Coast Sourdough website at www.wcsourdough.com, which advertises and promotes West Coast Sourdough restaurants under the WCSD Marks.

**II. Uppal Secretly Assigns SFB Holdings' Registrations To A Trust He Controls.**

24. After his removal as Chief Executive Officer in April 2024, Uppal had no role in WCSD's day-to-day operations. He did, however, remain a director of WCSD until February 2026, and was one of SFB Holdings' three directors when he executed the February 2026 Trademark Assignment.

25. On February 6, 2026, Uppal recorded with the USPTO, at Reel/Frame 9159/0602, a document titled "Trademark Assignment," bearing an execution date of February 3, 2026, that purported to transfer the WCSD Registrations from SFB Holdings to the "SFB Holdings Intellectual Property Custodial Trust" (the "Trademark Assignment"). The recordation cover sheet names the "SFB Intellectual Property Custodial Trust" as assignee and identifies Uppal as trustee. Uppal signed the Trademark Assignment twice: once on behalf of SFB Holdings, purporting to act as its "Chief Executive Officer," and once on behalf of the purported assignee, as "Trustee of the SFB Holdings Intellectual Property Custodial Trust." A true and correct copy of the Trademark Assignment is attached as Exhibit 5.

26. The Trademark Assignment purports to "assign[], transfer[], and convey[]" all of SFB Holdings' "right, title, and interest in and to the trademarks, service marks, registrations, applications, and associated rights identified on Schedule A," "together with the associated goodwill of the business symbolized by the Marks." Trademark Assignment § 1. Schedule A lists each of the WCSD Registrations.

27. The Trademark Assignment states that it is "made in furtherance of, and subject to, the terms of that certain Intellectual Property Custodial Trust Agreement by and between [SFB Holdings] and [the trust], as Trustee, dated February 2, 2026." *Id.* No such agreement was attached to the Trademark Assignment or recorded with the USPTO, and none has been provided to SFB Holdings.

28. The Trademark Assignment further provides that SFB Holdings "shall retain the right to continue using the Marks in commerce pursuant to a license granted by the Trust, and all such use shall inure to the benefit of Assignor as beneficiary of the Trust and shall preserve the goodwill associated with the Marks." *Id.* § 3. SFB Holdings never requested, accepted, or operated under any license from the Purported Trust.

29. SFB Holdings' board never authorized, approved, or ratified the Trademark Assignment or any trust agreement. Uppal did not disclose either document to his fellow directors, Deol and Bhatia, before or after he signed and recorded them. Uppal had no authority from SFB Holdings' board to transfer the WCSD Registrations and associated marks, which constituted SFB Holdings' only assets, to a trust that he purported to control. The purported transfer was a self-interested transaction with an interested director, was neither disclosed to nor authorized or ratified by the disinterested directors, and was not just and reasonable to SFB Holdings. On May 15, 2026, at a duly convened special meeting, SFB Holdings' board resolved that the Trademark Assignment was unauthorized and void ab initio—because Uppal lacked authority to execute it, neither the board nor the shareholders authorized or approved it, and it was a self-dealing transaction in breach of his fiduciary duties—and that SFB Holdings has at all times retained all right, title, and interest in the WCSD Marks. A true and correct copy of the Secretary's Certificate attaching those resolutions is attached as Exhibit 10. That action also constitutes SFB Holdings' election to avoid the transaction under California Corporations Code § 310. Independently, because the WCSD Registrations and associated marks constituted all or substantially all of SFB Holdings' assets, their transfer outside the ordinary course of business required approval by SFB Holdings' board of directors and by its outstanding shares under California Corporations Code § 1001(a). Neither approval was sought or given. Because the purported transfer was unauthorized and has been

avoided, the Trademark Assignment did not effectively convey any rights in the WCSD Marks or WCSD Registrations to the Purported Trust. *See* Sixth Claim for Relief, *infra*.

30. Uppal then cut SFB Holdings off from the USPTO's records concerning its own registrations. On February 12, 2026, Uppal's counsel filed a Change Address or Representation form for each of the WCSD Registrations that removed SFB Holdings' counsel of record, Hughey Phillips LLP; substituted himself as attorney of record, citing a "[c]hange of ownership"; and redirected all USPTO correspondence concerning the WCSD Registrations to himself. Since then, USPTO notices concerning the WCSD Registrations—including the USPTO's April 13, 2026 courtesy reminder concerning the upcoming Section 8 declaration of use for Reg. No. 6,324,643, and its May 11, 2026 reminder concerning Reg. No. 6,349,858—have gone to Uppal's counsel rather than to SFB Holdings.

31. Two weeks after recording the Trademark Assignment, on February 20, 2026, Uppal filed a lawsuit against Deol, Bhatia, and others in Sacramento County Superior Court. *Uppal v. Deol*, No. 26CV004080. In that complaint, Uppal described the "WEST COAST SOURDOUGH® trademark and the associated franchise system" as valuable assets whose goodwill depends on uniform quality standards and franchise practices across West Coast Sourdough restaurants. He did not disclose the Trademark Assignment or the Purported Trust, and he did not claim that he or any trust owned the mark.

32. On June 30, 2026, Uppal (suing solely in his claimed capacity as trustee) sued WCSD in Sacramento County Superior Court, alleging that the Purported Trust owns the WCSD Registrations and seeking to enjoin WCSD and its franchisees from using, licensing, or franchising the marks unless WCSD takes a license from the Purported Trust. *Uppal v. WCSD, Inc.*, No. 26CV015565. In that complaint, Uppal alleges that the Purported Trust was created "to temporarily hold the marks and federal registrations for the purpose of preserving and protecting them for the benefit of SFB Holdings, Inc.," that he "intends that the trademarks and registrations will be returned" to SFB Holdings, and that WCSD and its franchisees have used the marks without any license or quality-control agreement with the Purported Trust.

33. Several former WCSD franchisees, now operating as Cali Rays and represented by the same counsel as Uppal, have sued WCSD, citing purported uncertainty about who owns the West Coast Sourdough marks based on Uppal's unauthorized assignment.

34. The purpose of Uppal's clandestine scheme is transparent: to hold the WCSD Marks hostage as leverage in a personal dispute over the company's operations.

**III. Uppal Obtains New Registrations Of The Same Marks By Filing False Applications With The USPTO.**

35. On April 30, 2026, Uppal caused two use-based applications under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a), to be filed with the USPTO in the name of the "SFB Intellectual Property Custodial Trust," identifying Uppal as its sole trustee: Serial No. 99/797,745 for the standard-character mark WEST COAST SOURDOUGH, and Serial No. 99/797,831 for the standard-character mark WEST COAST SOURDOUGH DELI (together, the "Applications"). Both Applications sought registration in International Class 43 for restaurant services—the same services for which SFB Holdings' identical marks are registered and used. True and correct copies of the Applications as filed are attached as Exhibits 6 and 7.

36. The Applications were signed by Uppal's counsel, as attorney of record, on April 30, 2026. On information and belief, Uppal directed the filing of the Applications, supplied the information on which their factual statements were based, and knew and approved of their contents. The applicant is bound by the statements made on its behalf in the Applications.

37. Each Application made the following representations to the USPTO, each of which was false because the Purported Trust acquired no ownership or predecessor rights in the WCSD Marks or Registrations. The representation concerning Reg. No. 6,349,858 described in subparagraph (c) was also false regardless of who owned that registration:

a. ***Ownership.*** Each Application declared that "the applicant is the owner of the trademark/service mark sought to be registered." In truth, SFB Holdings owned the marks, and the Purported Trust owned nothing.

b. ***Claimed ownership of the WCSD Registrations.*** Each Application stated that "[t]he applicant claims ownership of active prior U.S. Registration No(s). 6132333,

6349858, and 6324643"—the WCSD Registrations. In truth, SFB Holdings owned the WCSD Registrations, and the only apparent basis for that claim was the unauthorized Trademark Assignment recorded in February 2026.

c. ***Five years of the applicant's own exclusive use.*** Each Application claimed acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), on the ground that "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce . . . for at least the five years immediately before the date of this statement." The WEST COAST SOURDOUGH DELI Application also claimed acquired distinctiveness based on "ownership on the Principal Register" of Reg. No. 6,349,858. In truth, the Purported Trust did not exist before February 2026 at the earliest; it had not itself used either mark and, because it had not validly succeeded to SFB Holdings' rights, could not claim WCSD's or its franchisees' prior use as its own; and it did not own Reg. No. 6,349,858. Nor did Reg. No. 6,349,858 establish acquired distinctiveness of WEST COAST SOURDOUGH DELI: the Application identified it as a registration "for the same mark," but it covers a different composite design and disclaims the words WEST COAST SOURDOUGH. The use asserted as establishing acquired distinctiveness was use by WCSD and its franchisees for SFB Holdings' benefit.

d. ***Dates of first use.*** Each Application claimed that the mark was first used anywhere "at least as early as 02/15/2020" and first used in commerce "at least as early as 03/09/2020". Those dates precede the Purported Trust's claimed formation and refer, if at all, to use by WCSD or its franchisees. Because the Purported Trust acquired no valid rights in the marks, it could not claim that earlier use as use inuring to its benefit. For WEST COAST SOURDOUGH DELI, the claimed dates are false even as to WCSD: WCSD's own registration records its first use of that mark as January 18, 2021.

e. ***Specimens.*** Each Application submitted, as specimens showing the applicant's use of the mark, screenshots of www.wcsourdough.com—WCSD's own website—accessed April 21, 2026, and declared that "[t]he specimen(s) shows the mark as used on or in connection with the goods/services." The website depicts WCSD's promotion of its franchised restaurants. Because the Purported Trust had not acquired the WCSD Marks or any valid related-company rights, those screenshots did not demonstrate use attributable to the Purported Trust.

f. ***No one else had the right to use the marks.*** Each Application declared that, "[t]o the best of the signatory's knowledge and belief, no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely . . . to cause confusion." In truth, SFB Holdings owned the identical marks and the WCSD Registrations, and WCSD and approximately 70 franchisees were using them under license.

38. **Uppal knew each of those statements was false when the Applications were filed.** He co-founded WCSD, served as its Chief Executive Officer when it adopted and registered the WCSD Marks, incorporated SFB Holdings to hold them, and served as a director of SFB Holdings. He personally negotiated and executed WCSD's franchise agreements licensing the marks to WCSD's franchisees. He knew that the Purported Trust had purportedly come into existence less than three months before the Applications were filed; that it had never operated a restaurant; that SFB Holdings' board had never authorized any transfer of its registrations; and that the website screenshots submitted as specimens depicted WCSD's business. While directing these filings, Uppal also participated in developing and operating the competing Cali Rays enterprise and in soliciting WCSD franchisees to leave WCSD's system.

39. **The false statements were material.** Because the USPTO had already determined that neither word mark was inherently distinctive, neither could be registered on the Principal Register without a valid Section 2(f) claim. The applicant's claim of acquired distinctiveness through its own five years of substantially exclusive and continuous use—and, for WEST COAST SOURDOUGH DELI, its claimed ownership of Reg. No. 6,349,858—was the basis on which the

USPTO registered the marks on the Principal Register. In addition, each Application sought registration of a mark identical to a mark already registered to SFB Holdings for identical services. The Applications' claim of common ownership of the WCSD Registrations was material to the Section 2(d) inquiry, because otherwise the identical preexisting registrations for identical services would have presented grounds for refusal under 15 U.S.C. § 1052(d).

40. **The USPTO relied on those statements.** Under the USPTO's examination procedures, when an applicant claims ownership of a prior registration, the examining attorney must accept the claim without further proof of ownership and must not cite that registration as a bar under Section 2(d). TMEP § 812.01. On July 24, 2026, the examining attorney accordingly reported that a search of the USPTO's records had "found no conflicting marks that would bar registration under Trademark Act Section 2(d)"—even though SFB Holdings' identical, previously registered marks covered identical services. The examining attorney amended the applicant's name to "The trustees of the SFB Intellectual Property Custodial Trust, a California trust, the trustees comprising Karndeep Uppal, a U.S. citizen," and approved both Applications for publication. Both Applications were published for opposition on August 18, 2026.

41. **Uppal did not disclose the Applications to SFB Holdings or WCSD.** On October 6, 2026, the USPTO registered both marks on the Principal Register under Section 2(f) in the name of the trustees of the Purported Trust, identifying Uppal as trustee: WEST COAST SOURDOUGH, U.S. Registration No. 8,486,459, and WEST COAST SOURDOUGH DELI, U.S. Registration No. 8,486,460 (together, the "Challenged Registrations"). The underlying application records contain the claimed first-use dates and the applicant's assertions of ownership of the WCSD Registrations. True and correct copies of the registration certificates are attached as Exhibits 8 and 9.

42. **Uppal made the false statements with intent to deceive the USPTO.** He filed the Applications to entrench and complete the unauthorized transfer he began with the Trademark Assignment: having purported to move SFB Holdings' existing registrations into the Purported Trust, he sought new registrations of the same marks that would issue in the name of the Purported Trust's trustee and purport to establish a separate basis for its claim of ownership, with stronger

statutory presumptions than SFB Holdings' existing word-mark registrations. By claiming WCSD's five years of use as the Purported Trust's own, Uppal obtained for himself the Principal Register registrations, and the presumptions of ownership and exclusive right that come with them, that the five years of use by WCSD and its franchisees had positioned SFB Holdings to obtain. He did so in secret, while litigating against WCSD's officers, and without informing the USPTO that SFB Holdings and WCSD claimed the marks.

43. The Purported Trust has exercised no control over the nature or quality of the services offered under the WCSD Marks, and neither WCSD, SFB Holdings, nor any WCSD franchisee has ever operated under a license from the Purported Trust. Indeed, the Trademark Assignment itself provides that all use of the marks "shall inure to the benefit of Assignor"—SFB Holdings. No use of the WCSD Marks by WCSD or its franchisees has inured to the benefit of the Purported Trust.

**IV. Uppal's Conduct Has Harmed Plaintiffs.**

44. The Trademark Assignment clouded SFB Holdings' record title beginning in February 2026. Issuance of the Challenged Registrations on October 6, 2026 added a distinct cloud, because the USPTO then issued Principal Register registrations in the name of the Purported Trust's trustee for SFB Holdings' own marks and services. While the Challenged Registrations remain on the register, they give the Purported Trust prima facie evidence of the validity of the registered marks, of its ownership of them, and of its exclusive right to use them in commerce. 15 U.S.C. § 1057(b).

45. In a separately filed action in Sacramento County Superior Court, WCSD and SFB Holdings allege that Uppal and others developed Cali Rays Sourdough Deli and induced approximately twenty WCSD franchisees to abandon their Franchise Agreements and convert their restaurants to that competing chain. *WCSD, Inc. v. CR Development, Inc.*, Sacramento Cnty. Super. Ct. Case No. 26CV023767 (filed Oct. 6, 2026). That action concerns the franchise defections and related misconduct; as amended, it does not seek an adjudication of title to the WCSD Marks, cancellation or correction of any registration, avoidance of the Trademark Assignment, or relief under the Lanham Act.

46. On May 16, 2026—barely two weeks after submitting the Applications to the USPTO—Cali Rays posted the photograph below on its public Instagram account (@califrays_sourdough) celebrating the grand opening earlier that week of a Cali Rays Sourdough Deli restaurant in Bakersfield, California. That restaurant occupies a location previously operated as a West Coast Sourdough franchise. Uppal appears in the photograph with Cali Rays personnel, wearing a polo shirt bearing the Cali Rays logo. The post remains publicly available.




47. In short, Uppal was publicly promoting a competing restaurant brand at the same time he represented to the USPTO that his trust owned the WEST COAST SOURDOUGH marks and had made five years of "substantially exclusive" use of them.

48. The recorded Trademark Assignment and subsequent Applications forced Plaintiffs to respond to conflicting claims of trademark ownership. The Challenged Registrations have further impaired SFB Holdings' ability to establish and protect its record title, by giving the Purported Trust the appearance of Principal Register rights in the identical marks. Plaintiffs seek in this action only such damages as were caused by procurement of the Challenged Registrations,

not a second recovery of royalties or other injuries attributable to the separately pleaded Cali Rays franchise-defection scheme.

49. Unless the Court cancels the Challenged Registrations and corrects the register, the conflicting registration and assignment records will continue to impair Plaintiffs' ability to establish ownership of the WCSD Marks and to maintain and enforce the WCSD Registrations, harm that monetary relief alone may not adequately remedy.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Cancellation Of Registration Nos. 8,486,459 And 8,486,460—Applicant Not The Owner

### (15 U.S.C. §§ 1051(a), 1064, 1119)

### (By All Plaintiffs Against Defendant)

50. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

51. Under 15 U.S.C. § 1119, in an action involving a registered mark independently within the Court's jurisdiction, the Court may determine the right to registration and order the cancellation of registrations, in whole or in part. Each Challenged Registration is less than five years old and may be cancelled on any ground that would have barred registration. 15 U.S.C. § 1064(1).

52. Only the owner of a mark may apply to register it under 15 U.S.C. § 1051(a). An application filed by a person who is not the owner of the mark on the filing date is void, and a registration issued on it is invalid.

53. On April 30, 2026, when the Applications were filed, SFB Holdings owned the WCSD Marks, and the Purported Trust owned no rights in them. The Trademark Assignment was unauthorized, was avoided by SFB Holdings, and conveyed no rights to the Purported Trust; the Purported Trust had never used either mark; and no use by WCSD or its franchisees inured to the Purported Trust's benefit.

54. But even if the Trademark Assignment had conveyed record title, the Purported Trust was not the owner of the marks: by the Trademark Assignment's own terms, all use of the

marks inured to the benefit of SFB Holdings; by Uppal's own account, the Purported Trust held whatever it held temporarily and for SFB Holdings' benefit; and the Purported Trust neither used the marks nor controlled the nature or quality of anyone else's use, so no use by WCSD or its franchisees could be attributed to it as a related company. At most, the Purported Trust would have held an interest shared with SFB Holdings, and an applicant that is not the sole owner of a mark cannot register it. Alternatively, if SFB Holdings' title were disregarded, the WCSD Marks are owned by WCSD, which has used and controlled them since 2020. Under any view, the Purported Trust was not the owner.

55. Plaintiffs have a real interest in the cancellation of the Challenged Registrations and a reasonable belief that they are being and will be damaged by them. SFB Holdings owns the identical WCSD Marks and the WCSD Registrations, and WCSD uses and licenses the marks in its franchise system.

56. The Challenged Registrations are void because the applicant was not the owner of the marks when the Applications were filed, and the Court should order them cancelled under 15 U.S.C. § 1119.

**SECOND CLAIM FOR RELIEF**

**Cancellation Of Registration Nos. 8,486,459 And 8,486,460—Fraud On The USPTO**

**(15 U.S.C. §§ 1064(3), 1119)**

**(By All Plaintiffs Against Defendant)**

57. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

58. A registration may be cancelled at any time if it was obtained fraudulently. 15 U.S.C. § 1064(3).

59. As alleged above, in the Applications filed April 30, 2026, Uppal knowingly caused counsel acting at his direction to submit false, material representations of fact to the USPTO concerning the applicant's ownership of the marks, its ownership of the WCSD Registrations, its supposed five years of substantially exclusive and continuous use, its dates of first use, the specimens of use, and the absence of any other person with the right to use the marks.

60. Uppal knew that the material representations concerning the applicant's ownership and qualifying use were false when made, and caused them to be submitted with the intent to deceive the USPTO into issuing registrations to which the Purported Trust was not entitled. Uppal could not have believed in good faith that the Purported Trust owned the marks: he personally executed both sides of the Trademark Assignment, knew that SFB Holdings' board had neither been asked to approve it nor approved it, and concealed it from his fellow directors both before and after the Applications were filed.

61. The representations concerning ownership and acquired distinctiveness were material to the USPTO's examination of the Applications: without a valid Section 2(f) claim, neither mark was eligible for registration on the Principal Register. The claimed ownership of the WCSD Registrations was likewise material: it required the examining attorney to accept the applicant's ownership of SFB Holdings' identical registrations without proof and not to cite them under Section 2(d). TMEP § 812.01. The USPTO accepted the applicant's Section 2(f) claims and claimed ownership of the WCSD Registrations, approved the Applications, and issued the Challenged Registrations in reliance on them.

62. Plaintiffs have a real interest in the cancellation of the Challenged Registrations and a reasonable belief that they are being and will be damaged by them.

63. The Challenged Registrations were obtained fraudulently, and the Court should order them cancelled under 15 U.S.C. §§ 1064(3) and 1119.

**THIRD CLAIM FOR RELIEF**

**Cancellation Of Registration Nos. 8,486,459 And 8,486,460—Priority And Likelihood Of Confusion**

**(15 U.S.C. §§ 1052(d), 1064, 1119)**

**(By All Plaintiffs Against Defendant)**

64. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

65. A registration that is less than five years old may be cancelled on the ground that the registered mark so resembles a mark registered in the USPTO, or a mark previously used in

the United States by another and not abandoned, as to be likely, when used on or in connection with the registrant's goods or services, to cause confusion, mistake, or deception. 15 U.S.C. §§ 1052(d), 1064(1).

66. WCSD used the WEST COAST SOURDOUGH mark in commerce beginning no later than February 2020 and subsequently used the WEST COAST SOURDOUGH DELI mark, as alleged above. In April 2023, WCSD assigned the marks and accompanying goodwill to SFB Holdings, which succeeded to WCSD's trademark rights. WCSD and its franchisees continued to use the marks thereafter under WCSD's control, and that use inured to SFB Holdings as the owner of record that WCSD designated, before the Applications' April 30, 2026 filing date. The Purported Trust has no earlier use or rights. SFB Holdings has not abandoned the WCSD Marks, and it owns the WCSD Registrations, which issued before the Applications were filed.

67. The marks in the Challenged Registrations—WEST COAST SOURDOUGH and WEST COAST SOURDOUGH DELI—are identical to SFB Holdings' registered and previously used marks, and they cover identical restaurant services offered through identical channels of trade to identical classes of consumers. Registration of those marks to the Purported Trust is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of the services offered under them.

68. Plaintiffs have a real interest in the cancellation of the Challenged Registrations and a reasonable belief that they are being and will be damaged by them.

69. The Court should order the Challenged Registrations cancelled under 15 U.S.C. §§ 1052(d), 1064, and 1119.

**FOURTH CLAIM FOR RELIEF**

**False Or Fraudulent Registration**

**(15 U.S.C. § 1120)**

**(By All Plaintiffs Against Defendant)**

70. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

71. Under 15 U.S.C. § 1120, any person who procures registration in the USPTO of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, is liable in a civil action to any person injured thereby for any damages sustained in consequence thereof.

72. Uppal procured the Challenged Registrations by the false and fraudulent declarations and representations alleged above, and by false means.

73. As a direct and proximate result of the procurement and issuance of the Challenged Registrations, Plaintiffs have incurred business and administrative expenses in investigating and addressing the additional purported Principal Register rights asserted by the Purported Trust, and their ability to establish, maintain, and enforce SFB Holdings' ownership of the marks has been impaired. Plaintiffs do not seek under § 1120 to recover franchise royalties or other damages caused exclusively by conduct preceding issuance of the Challenged Registrations.

74. Plaintiffs are entitled to recover from Uppal any damages they prove were sustained in consequence of the procurement of the Challenged Registrations, in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**Declaratory Judgment And Rectification Of The Register**

**(28 U.S.C. §§ 2201–2202; 15 U.S.C. § 1119)**

**(By All Plaintiffs Against Defendant)**

75. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

76. An actual, substantial, and continuing controversy exists between Plaintiffs and Uppal, individually and as trustee of the Purported Trust, concerning ownership of the WCSD Marks and the WCSD Registrations. Uppal claims, through the Trademark Assignment recorded with the USPTO and the Applications, that the Purported Trust owns the WCSD Registrations. Plaintiffs contend that SFB Holdings owns them, and that SFB Holdings' board declared the Trademark Assignment void on May 15, 2026, which also constitutes its election to avoid the unauthorized interested-director transaction.

77. The controversy is ripe and of sufficient immediacy to warrant declaratory relief. The USPTO's assignment records currently identify the Purported Trust as the owner of the WCSD Registrations, and Uppal has relied on that recorded claim to obtain the Challenged Registrations. The Challenged Registrations also give the Purported Trust Principal Register rights in marks identical to those that WCSD and approximately 70 franchisees use every day, and Uppal—who is affiliated with the competing Cali Rays enterprise—may assert those rights against that use at any time.

78. Plaintiffs are entitled to a declaration that (a) for the reasons alleged in the Sixth Claim for Relief, the Trademark Assignment conveyed no right, title, or interest in the WCSD Marks or the WCSD Registrations; (b) neither Uppal nor the Purported Trust holds any right, title, or interest in the WCSD Marks or the WCSD Registrations; (c) SFB Holdings is the owner of the WCSD Marks and the WCSD Registrations; and (d) WCSD's and its franchisees' use of the WCSD Marks does not infringe any right of Uppal or the Purported Trust under the Challenged Registrations.

79. Under 15 U.S.C. § 1119, the Court may "otherwise rectify the register with respect to the registrations of any party to the action." Plaintiffs seek an order rectifying the federal trademark register to reflect SFB Holdings' ownership of the WCSD Registrations and supplemental relief under 28 U.S.C. § 2202 requiring Uppal, individually and as claimed trustee, to execute and submit any corrective instruments needed to reconcile the USPTO assignment-recordation history and ownership entries with the Court's declaration.

**SIXTH CLAIM FOR RELIEF**

**Declaratory Relief — Unauthorized And Voidable Interested-Director Transaction**

**(28 U.S.C. §§ 2201–2202; Cal. Corp. Code §§ 300, 310, 1001)**

**(By SFB Holdings Inc. Against Defendant)**

80. SFB Holdings incorporates by reference each of the preceding paragraphs as if fully set forth herein.

81. SFB Holdings is a California corporation, and California law governs the authority of its directors and officers to bind it and the validity of transactions between SFB Holdings and its directors.

82. Under California Corporations Code § 300(a), SFB Holdings' business and affairs are managed, and all corporate powers are exercised, by or under the direction of its board of directors. At all relevant times, SFB Holdings' board consisted of Deol, Bhatia, and Uppal.

83. The Trademark Assignment, and the purported Trust Agreement it says it implements, were a transaction between SFB Holdings and one of its own directors. Uppal executed the Trademark Assignment for the assignor, claiming to act as SFB Holdings' "Chief Executive Officer." He also executed it for the assignee, as "Trustee" of the Purported Trust. On information and belief, based on the Trademark Assignment's recital that the agreement is between SFB Holdings and the trust, he likewise executed the purported Trust Agreement on both sides. Through the transaction, Uppal took legal title to SFB Holdings' marks and registrations, and control over them, in his own name as trustee. Uppal had a material financial interest in the transaction: as trustee he gained control over whether, by whom, and on what terms the WCSD Marks may be used and licensed, and, on information and belief, he holds an ownership or equivalent economic interest in Cali Rays, a competing business whose interests are advanced by impairing SFB Holdings' and WCSD's ownership and control of the marks.

84. **No authority.** SFB Holdings' board never authorized, approved, or ratified the Trademark Assignment, the purported Trust Agreement, or any transfer of the WCSD Marks or WCSD Registrations. Before Uppal executed and recorded them, no board meeting was noticed or held to consider them, and no written consent was solicited or given. Whatever officer title Uppal held, no officer of SFB Holdings had actual authority to transfer all of the corporation's assets, outside the ordinary course of its business, to himself as trustee without board approval. Uppal cannot rely on apparent authority, because he was both the person claiming to act for SFB Holdings and the counterparty, and he knew he had no board authorization.

85. **Transfer of substantially all assets.** The WCSD Marks and WCSD Registrations were all or substantially all of SFB Holdings' assets. SFB Holdings holds no material assets other

than intellectual property associated with the West Coast Sourdough business and conducts no independent operating business. Their transfer was not in the usual and regular course of SFB Holdings' business. Under California Corporations Code § 1001(a), such a transfer requires approval of the principal terms by SFB Holdings' board and by its outstanding shares. Neither approval was sought or given.

86. **Voidable interested-director transaction.** Even if the Trademark Assignment could otherwise be attributed to SFB Holdings, it is voidable under California Corporations Code § 310. None of § 310(a)'s safe harbors applies:

(a) Uppal never disclosed the material facts of the transaction, or his interest in it, to SFB Holdings' shareholders, and the shareholders never approved it.

(b) Uppal never disclosed those facts to SFB Holdings' board, and no disinterested directors ever authorized, approved, or ratified it.

(c) Because no one ever authorized, approved, or ratified the transaction on SFB Holdings' behalf, there was no point at which it could have been just and reasonable "as to the corporation at the time it was authorized, approved or ratified." In any event, it was not just and reasonable.

87. The Trademark Assignment was not just and reasonable to SFB Holdings. It purported to divest SFB Holdings of its only assets and to place legal title to, and control over, them in a trust Uppal controls. SFB Holdings received no consideration. The trust agreement governing SFB Holdings' supposed "beneficial" interest has never been provided to SFB Holdings. And the transfer served no legitimate business purpose of SFB Holdings. Under § 310(a)(3), Uppal bears the burden of proving otherwise.

88. **Election to avoid.** SFB Holdings has elected to avoid the Trademark Assignment and disclaims any purported Trust Agreement that Uppal claims to have executed on its behalf. On May 15, 2026, at a duly convened special meeting, SFB Holdings' board adopted resolutions declaring the Trademark Assignment unauthorized, invalid, and void ab initio because (i) Uppal lacked authority to execute it, (ii) neither the board nor the shareholders authorized or approved it, and (iii) it was a self-dealing transaction in breach of his fiduciary duties. The resolutions also

confirm that SFB Holdings has at all times retained all right, title, and interest in the WCSD Marks, and direct its officers to restore its record ownership. A true and correct copy of the Secretary's Certificate and resolutions is attached as Exhibit 10. To the extent the Trademark Assignment is voidable rather than void, those resolutions constitute SFB Holdings' election to avoid it under § 310, which SFB Holdings reaffirms by this Complaint.

89. An actual, substantial, and continuing controversy exists between SFB Holdings and Uppal, individually and as trustee of the Purported Trust, about whether the Trademark Assignment and the purported Trust Agreement bind SFB Holdings. Uppal maintains that the Purported Trust holds title to the WCSD Registrations under the Trademark Assignment. The USPTO's assignment records reflect that claim. Uppal relied on it to obtain the Challenged Registrations.

90. SFB Holdings is entitled to a declaration that:

(a) the Trademark Assignment and the purported Trust Agreement were not authorized by SFB Holdings and are not binding on it;

(b) alternatively, they are voidable under California Corporations Code § 310 and have been validly avoided;

(c) the Trademark Assignment conveyed no right, title, or interest in the WCSD Marks or the WCSD Registrations to Uppal or the Purported Trust; and

(d) to the extent Uppal or the Purported Trust holds record title to any WCSD Registration, he holds it as constructive trustee for SFB Holdings.

91. SFB Holdings is further entitled under 28 U.S.C. § 2202 to an order requiring Uppal, individually and as trustee, to reconvey to SFB Holdings any interest he claims in the WCSD Marks and the WCSD Registrations, and to execute and record any documents needed to restore SFB Holdings as owner of record.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant as follows:

1. An order under 15 U.S.C. § 1119 cancelling U.S. Registration Nos. 8,486,459 (WEST COAST SOURDOUGH) and 8,486,460 (WEST COAST SOURDOUGH DELI) in their entirety, and directing the Clerk to certify the order to the Director of the USPTO;

2. A declaration, on the Fifth and Sixth Claims for Relief, that the Trademark Assignment and purported Trust Agreement were unauthorized and not binding on SFB Holdings or, alternatively, have been validly avoided under California Corporations Code § 310; that neither Uppal nor the Purported Trust holds any right, title, or interest in the WCSD Marks or WCSD Registrations; that SFB Holdings is their owner; that, to the extent Uppal or the Purported Trust holds record title to any WCSD Registration, he holds it as constructive trustee for SFB Holdings; and that WCSD's and its franchisees' use of the WCSD Marks does not infringe the Challenged Registrations;

3. An order under 15 U.S.C. § 1119 rectifying the trademark register and associated ownership entries to reflect SFB Holdings Inc. as the owner of U.S. Registration Nos. 6,132,333, 6,324,643, and 6,349,858, and directing the Clerk to certify the order to the Director of the USPTO;

4. An order requiring Uppal, individually and as trustee of the Purported Trust, within 14 days of the order, to reconvey to SFB Holdings any interest claimed in the WCSD Marks and WCSD Registrations, and execute and record with the USPTO all documents reasonably necessary to reflect SFB Holdings Inc. as owner of record of the WCSD Registrations and to correct the USPTO assignment records, and to designate SFB Holdings' counsel as attorney of record and correspondent for the WCSD Registrations, with authorization for appropriate substitute execution if Uppal fails to comply;

5. A preliminary and permanent injunction restraining Uppal, in his individual and claimed trustee capacities, and persons acting in active concert or participation with him who receive actual notice of the injunction, from (a) knowingly asserting that Uppal or the Purported Trust owns the WCSD Marks or WCSD Registrations based on the Trademark Assignment, purported Trust Agreement, or Challenged Registrations; (b) filing with the USPTO instruments purporting to assign, license, or otherwise convey rights in the WCSD Marks or WCSD Registrations without authorization from SFB Holdings or leave of Court; (c) representing to

franchisees, prospective franchisees, landlords, suppliers, delivery platforms, or other third parties that the Purported Trust holds title to those marks or registrations; (d) assigning, licensing, encumbering, or otherwise transferring any interest in the Challenged Registrations; and (e) surrendering, abandoning, or permitting to lapse any WCSD Registration, or obstructing SFB Holdings' filing of declarations of use or other maintenance documents for the WCSD Registrations under 15 U.S.C. § 1058; provided that the injunction shall not bar filings required to comply with judicial orders or authorized procedural filings in this litigation;

6. Damages under 15 U.S.C. § 1120 in an amount to be proven at trial;

7. Reasonable attorney's fees to the extent permitted by law;

8. Prejudgment and postjudgment interest;

9. Costs of suit; and

10. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 30, 2026

Respectfully submitted,

/s/ Stephen M. Duvernay
Stephen M. Duvernay
Attorneys for WCSD, Inc. and SFB Holdings Inc.